### Succession of SULLIVAN.
### No. 988.

Court of Appeal of Louisiana. First Circuit.

June 8, 1932.

See, also, 173 La. 647, 138 So. 431.

Benton & Benton, of Baton Rouge, for appellants.

Shelby Taylor and A. B. Parker, both of Baton Rouge, for appellee.

LE BLANC, J.

As shown by the inventory in the succession of Miss Susan Sullivan, decedent herein, there were listed among the assets of her estate twenty-one head of cattle, appraised at the sum of $500. Not long after he had qualified as such, W. P. Sullivan, administrator of the succession, petitioned the court and obtained an order for the sale of these cattle in order to pay the privilege debts of the succession. About three weeks after he had been granted this order, he again appears in court, presenting a petition in which he alleges that, while attempting to effect the sale as directed, one Emile Friedman and Belle Friedman, his wife, went upon the lands of the decedent, corralled and drove all of the said cattle therefrom, confined them on their own premises, and were now setting up some pretended claim of ownership. On such allegations, he obtained an order of sequestration under which the cattle were taken in custody by the sheriff and Sullivan was appointed keeper. Mrs. Belle Friedman and her husband, Emile Friedman, immediately filed a motion to dissolve the sequestration, alleging the ownership of all the cattle seized except three head which they averred belonged to the estate of Miss Susan Sullivan. On trial of the motion, the writ was maintained, and judgment rendered decreeing the cattle to be the property of the estate of Miss Sullivan. It is from that judgment that this appeal was taken by Mrs. Belle and Emile Friedman.

The sole issue in the present controversy, therefore, is as to the ownership of these cattle.

Mrs. Friedman's maiden name was Vaughn, and she was a grandniece of the decedent, Miss Susan Sullivan, who was never married. She, with two sisters and three brothers, were among the numerous heirs to the estate. She had been practically raised by her grandaunt, and after she married Friedman, they continued to live with her and reared their children in her home. About two years before Miss Sullivan died, and when she was over 80 years of age, they all moved

into Mrs. Friedman's home, adjoining the other property, and there Miss Sullivan died on January 17, 1931, at the age of 83 years. Mrs. Friedman testifies that it was at Miss Sullivan's request that they moved. She was sick and unable to stay alone.

It is shown that Mrs. Friedman inherited some fifteen or nineteen head of cattle from her father who had died some sixteen years before this controversy arose. She says that after her father died she removed the cattle which she inherited to the Sullivan place where she was living, and from then on she traded quite a bit, selling some and buying cows with the proceeds of her sales. She claims to have bought quite a number, including several head from her sisters and some from her husband's relatives, and she produced receipts given for the money she claims to have paid out. Two of her brothers, however, Haney and Eugene Vaughn, testify that the cattle she had inherited from her father were never removed from the old Vaughn place to the home of Miss Sullivan, who had always had on her place a herd of cattle numbering about thirty head. These brothers, as well as W. P. Sullivan, the administrator of the succession, and other witnesses who knew Miss Sullivan's cattle, all say that her herd never mixed with any of Mrs. Friedman's cattle. The fact is that neither of her brothers nor her uncle who testified, all of whom lived near by, ever heard of Mrs. Friedman claiming these twenty-one head of cattle or any part thereof prior to the time this proceeding was instituted.

It appears, moreover, that, at the time the cattle were being dipped to prevent the spread of cattle tick, they were dipped as the cattle of Miss Susan Sullivan. This is shown not only by the testimony of Mrs. Friedman's brothers and other relatives who assisted in the dipping work, but also by that of the inspectors who had charge of it. Only one witness, a Mr. Burke, whose wife is a sister of Mrs. Friedman, testified that Mrs. Friedman's cattle mingled with the Sullivan herd and that they were all dipped together. On this one point it could hardly be expected that his testimony would be accepted against that of the several other witnesses.

Mr. M. R. Upton, one of the appraisers who assisted at the taking of the inventory in the succession of Miss Sullivan, testified that Mr. Friedman himself pointed out the twenty-one head of cattle as belonging to the estate, and it does not appear that there was any protest made either by him or his wife that they be listed among the assets of the succession.

Counsel for Mrs. Friedman lays great stress on the testimony of Mr. W. A. Loyd, deputy assessor of the parish of East Baton Rouge, to the effect that for the year 1930 Miss Susan Sullivan did not return any cattle whatever for assessment. It appears, however, that Mrs. Friedman listed ten head with him in her own name and in the following year she gave in fifteen head. Of course, he says that he listed the property just as it was given to him without any personal knowledge on his part as to who was the real owner. This witness admits that even in 1929 when he went to see Miss Sullivan regarding her assessment she was an "old and feeble lady." She was then over 80 years of age, and there is serious doubt that she was as interested and as alert in business matters as the ordinary person of younger years, and no doubt intrusted such matters to her niece who lived with her. Even were we to give this testimony its most favorable effect, however, we do not think that it is sufficient to overcome the many other facts and circumstances testified to, and which, in our opinion, support the judgment of the lower court decreeing these twenty-one head of cattle to be the property of the estate of Miss Susan Sullivan.

Judgment affirmed.